PT:MKM
F.#2015R00747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JUAN ÁNGEL NAPOUT, et al.,

         Defendants.

- - - - - - - - - - - - - - - - - - -X

Docket No. 15-CR-252 (S-2) (PKC)


THE GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT
NAPOUT'S MOTION TO VACATE FOUR ORDERS AUTHORIZING DEFERRED
DISCLOSURE OF SEALED SEARCH WARRANTS


BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Samuel P. Nitze
M. Kristin Mace
Keith D. Edelman
Assistant United States Attorneys
    (Of Counsel)

1

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the June 1, 2017 motion filed by defendant Juan Ángel Napout to vacate four orders entered by the Court on July 8, 2016, July 18, 2016, and April 11, 2017 (Dkt. Nos. 579-582) (the "Challenged Orders"), in which the Court authorized the deferred disclosure of four previously sealed search warrants, and the affidavits filed in support of those warrants, until three months before the start of jury selection in the trial of this case. See Napout's Motion to Vacate dated June 1, 2017 (Dkt. No. 596) (hereafter "Mot."). In challenging these orders, Napout argues that the warrants and affidavits are not properly sealed and deferred disclosure is inappropriate because he is deprived of the opportunity to challenge the Warrants and there is an insufficient factual basis for the Challenged Orders. Alternatively, Napout asks the Court to reconsider the current disclosure date of August 7, 2017, in light of the July 7, 2017 deadline for the defendants' motions to suppress. See id. at 2-3.

Napout's arguments fail because the government's applications in support of the Challenged Orders, which were properly filed ex parte pursuant to Federal Rule of Criminal Procedure 16(d)(1), make clear that access will only be deferred, not denied, and they provide more than sufficient bases for deferred disclosure by detailing the likely negative effect of disclosure on the government's ongoing investigation and the security of witnesses. In addition, as contemplated in the ex parte applications, the government agrees that the defendants should have an opportunity to challenge the warrants after they are disclosed on August 7, 2017, even though this will occur after the July 7, 2017 deadline for other motions to suppress. Accordingly, for the reasons set forth below and in the

1

government's ex parte applications in support of the Challenged Orders, the government respectfully submits that the Court should deny Napout's motion in its entirety.

BACKGROUND

I. The Indictment

On May 20, 2015, a grand jury in this District returned a 47-count indictment (the "Original Indictment") charging 14 individuals with racketeering conspiracy and wire fraud and money laundering offenses, among other crimes. The Original Indictment was unsealed on May 27, 2015 following the arrests of some of the charged defendants. On November 25, 2015, the grand jury returned a 92-count superseding indictment (the "First Superseding Indictment") charging 16 additional defendants. The First Superseding Indictment was unsealed on December 3, 2015, following the arrests of some of the newly charged defendants, including defendant Napout.

In anticipation of trial, on June 14, 2017, the government sought and obtained a second superseding indictment (the "Indictment"), charging the three trial defendants who are currently before the Court with the same offenses charged in the First Superseding Indictment. See United States v. Napout, et al., 15-CR-252 (S-2); Government's Ltr. dated June 14, 2017 (Dk. No. 603). The trial of Napout and his co-defendants Manuel Burga and José Maria Marin on charges of conspiratorial racketeering, wire fraud, and money laundering offenses in connection with their participation in schemes to enrich themselves and their co-conspirators through the corruption of international soccer is scheduled to begin on November 6, 2017.

2

II.      The Search Warrants and Deferred Disclosure Orders

Following the unsealing of the First Superseding Indictment on December 3, 2015, Napout was arrested by Swiss law enforcement authorities in Zurich, Switzerland, pursuant to a provisional arrest request. In connection with Napout's arrest, Swiss law enforcement authorities recovered two mobile telephones and an iPad. These devices were then transferred to the custody of the Federal Bureau of Investigation.

On June 22, 2016, United States Magistrate Judge Robert M. Levy, signed and sealed a warrant to search Napout's two mobile telephones and his iPad (16-MISC-605). Based on the government's ex parte application dated July 7, 2016, the Honorable Raymond J. Dearie signed an order dated July 8, 2016, authorizing the deferred disclosure to the defendants of the search warrant and affidavit until three months before the start of jury selection. See Order dated July 8, 2016 (Dkt. No. 582).

On July 11, 2016, Judge Levy signed and sealed a warrant to search the Apple iCloud account associated with the email account janb107@hotmail.com (16-MISC-639). On July 14, 2016, Judge Levy signed and sealed a warrant to search the janb107@hotmail.com email account itself (16-MISC-658). Based on the government's ex parte application dated July 18, 2016, Judge Dearie signed two orders of the same date authorizing the deferred disclosure to the defendants of these search warrants and affidavits until three months before the start of jury selection. See Orders dated July 18, 2016 (Dkt. Nos. 580 and 581). The government and counsel for Napout are currently engaged in a coordinated privilege review process of the material obtained as a result of the searches of Napout's iPad, and his iCloud and Hotmail accounts.

3

On March 24, 2017, Judge Levy signed and sealed a warrant to search three additional electronic devices used by defendant Napout before his arrest that were obtained in connection with the government's ongoing investigation (17-MISC-271). Based on the government's ex parte application dated March 27, 2017, the Honorable Pamela K. Chen signed an order dated April 11, 2017, authorizing the deferred disclosure to the defendants of the search warrant and affidavit until three months before the start of jury selection. See Order dated April 11, 2017 (Dkt. No. 579).

Each of the forgoing ex parte applications (collectively, the "Ex Parte Applications")[1] sets forth the bases for deferred disclosure of the four warrants and supporting affidavits at issue (collectively, the "Warrants"), including: the government's ongoing investigation into as yet uncharged crimes; the government's ongoing investigation into conduct by as yet uncharged co-conspirators; and information about witnesses who face serious security risks. The Ex Parte Applications provide very specific details about the crimes and people under investigation and the risks to specific witnesses and their families, some of whom are currently residing overseas.[2] In addition, notwithstanding the July 7, 2017 deadline for filing motions to suppress, the Ex Parte Applications specifically note that the defendants should and will be provided with ample time prior to trial to review the

---

[1] For ease of reference, courtesy copies of the Ex Parte Applications, which remain under seal, are provided to the Court with a courtesy copy of this Memorandum.

[2] If it would assist the Court in it's resolution of the current motion, the government is prepared to provide to the Court ex parte additional information concerning the specific witnesses and events referenced in the Ex Parte Applications, including recently obtained additional evidence of the threat referenced on page 6 of the March 27, 2017 ex parte application.

4

Warrants and file any motions concerning the admissibility of evidence obtained from the searches. The government has never suggested, and the Court has never ruled, that Napout will be precluded from challenging these Warrants before trial. In fact, in a written exchange with counsel for Napout prior to his filing of the instant motion, the government made clear that it will not oppose setting a schedule for the filing of such motions after the Warrants are disclosed pursuant to the Challenged Orders.[3]

In accordance with the Challenged Orders, and based on the current trial schedule, the government anticipates seeking limited unsealing orders allowing the disclosure of the Warrants, pursuant to the protective order for discovery in this case, to the trial defendants by August 7, 2017.[4]

## ARGUMENT

I. Legal Standards

    A. Sealing

Judicial proceedings are presumptively open to the public under the First Amendment, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 573 (1980), and there is a common-law right of presumptive access to judicial records and documents, Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978).

---

[3] In noting the government's position in his motion, Napout simply stated that the government "objected to Mr. Napout's request," without explaining that the government made clear that it does not oppose disclosure to the defendants in accordance with the Challenged Orders or setting a schedule for motions to suppress after such disclosure. See Mot. at 16.

[4] August 6, 2017, which is three months before the start of jury selection, falls on a Sunday.

Because the right is "qualified," however, it may be overcome in certain circumstances. A court may close an otherwise public proceeding, or seal a particular document, if it makes "specific, on the record findings demonstrating that closure [or sealing] is essential to preserve higher values and is narrowly tailored to serve that interest." United States v. Alcantara, 396 F.3d 189, 199 (2d Cir. 2005) (alteration omitted). As the Second Circuit has formulated the relevant balancing test, when deciding a closure or sealing motion, a court must (1) "determine . . . if there is a substantial probability of prejudice to a compelling interest of the defendant, government, or third party" that closure would prevent; (2) if there is such a probability, "consider whether reasonable alternatives to closure" can otherwise protect the compelling interest; (3) if reasonable alternatives are lacking, "determine whether, under the circumstances of the case, the prejudice to the compelling interest overrides the First Amendment right of access"; and (4) if closure [or sealing] is warranted, devise an order that, "while not necessarily the least restrictive means available to protect the endangered interest, is narrowly tailored to that purpose." United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995) (internal quotation marks, alteration, and citation omitted).

The Second Circuit has provided specific, illustrative examples of interests warranting closure or sealing, such as the need to protect the integrity of an ongoing investigation, including the safety of witnesses, and to prevent interference, flight and other obstruction, see United States v. Amodeo ("Amodeo I"), 44 F.3d 141, 147 (2d Cir. 1995); the defendant's right to a fair trial, see, e.g., Doe, 63 F.3d at 128; the privacy interests of the defendant, victims or other persons, see, e.g., Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984), Doe, 63 F.3d at 128; "the integrity of significant [government]

6

activities entitled to confidentiality, such as ongoing undercover investigations or detection devices," Doe, 63 F.3d at 128 (quoting In re Herald, 734 F.2d 93, 100 (2d Cir. 1984)); danger to persons or property, id.; and protection of the secrecy of grand jury matters and an ongoing criminal investigation, id.; see also United States v. Haller, 837 F.2d 84 (2d Cir. 1988) (upholding sealing of plea agreement to protect investigation); In re Dep't of Investigation, 856 F.2d 481, 484 (2d Cir. 1988) (recognizing law enforcement privilege as interest worthy of protection "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation"); United States v. Madori, 419 F.3d 159, 171 (2d Cir. 2005) (no error in court's sealing of ex parte submission by the government where "disclosure of [a co-defendant's] cooperation would have endangered his life."); United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1048 (2d Cir. 1995) (reversing and remanding the district court's order unsealing a redacted version of a sealed investigative report).

The Supreme Court has recognized "that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon, 435 U.S. at 599.

B.   Deferred Disclosure

Federal Rule of Criminal Procedure 16(d)(1) provides, in pertinent part, that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection,

or grant other appropriate relief."[5] Thus, it is within the district court's discretion to defer, or even deny, discovery under Rule 16. See United States v. Delia, 944 F.2d 1010, 1018 (2d Cir. 1991) (noting that because the language of Rule 16(d)(1) "is . . . permissive," the district court may "limit or otherwise regulate discovery had pursuant to the Rule").

In deciding whether to defer disclosure, it is appropriate for a court to consider witness safety and the integrity of an ongoing investigation. See Fed. R. Crim. P. 16(d)(1) (Advisory Committee Notes to the 1966 Amendments) ("Among the considerations to be taken into account by the court will be the safety of witnesses and others, [and] a particular danger of perjury or witness intimidation, . . . ."); see also United States v. Coiro, 785 F. Supp. 326, 330 (E.D.N.Y. 1992) (Glasser, J.) (granting the government's request to defer disclosure of defendant's earlier grand jury testimony to "guarantee the integrity of another pending criminal proceeding"); United States v. Coppa, 267 F.3d 132, 138-39 (2d Cir. 2001) (delayed disclosure appropriate where earlier disclosure would undermine witness safety and ongoing investigations); United States v. Stoddard, 710 F.2d 21, 23-24 (2d Cir. 1983) (per curiam) (The government has an interest "in preserving the secrecy of ongoing criminal investigations.").

An order deferring disclosure pursuant to Rule 16(d)(1) will not be disturbed on appeal absent a showing of an abuse of discretion by the court. Coiro, 785 F. Supp. at 330 ("The decision whether or not to enter such a protective order is – as with all discovery

---

[5] Rule 16(d)(1) expressly permits ex parte inspection by the Court of the government's bases for seeking deferred disclosure.

orders of a court under Rule 16 – a matter for the discretion of the district court; thus, such an order will not be disturbed on review unless there is a showing of an abuse of that sound discretion.").

II.   Discussion

In each of the Warrants, the government provided detailed information supporting sealing based on the need to protect the integrity of the government's ongoing investigation and the safety of witnesses.  See Amodeo I, 44 F.3d at 147.  Continued sealing of the Warrants "is essential to preserve [these] higher values and is narrowly tailored to serve that interest" by scheduling disclosure to the defendants three months prior to the start of trial.  Alcantara, 396 F.3d at 199.  Likewise, the government's Ex Parte Applications demonstrate "good cause" for deferred disclosure of the Warrants.  Fed. R. Crim. P. 16(d)(1).  In his motion, however, Napout argues that the Challenged Orders deprive him of the opportunity to challenge the Warrants and that there is an insufficient factual basis for the Challenged Orders.  Neither argument has any merit.

A.   The Challenged Orders Do Not Prevent Napout From Challenging the Warrants

Napout's primary argument in favor of overturning Judge Levy's sealing determinations and vacating the Challenged Orders is that he has a right to access the Warrants for the purpose of "challeng[ing] the lawfulness" of the searches, and that the Court's orders are "denying" him such access.  See Mot. at 3-7, 13-16.  Napout fails to acknowledge, however, that the Challenged Orders direct the government to provide the defendants with the warrants three months prior to the start of jury selection.  Instead, Napout cites several cases that concern total denial of access to ex parte submissions through

9

the completion of an adversarial proceeding. See id.; see, e.g., United States v. Abuhamra, 389 F.3d 309, 322 (2d Cir. 2004) (noting that due process concerns are "raised when a court relies on ex parte submissions in resolving an issue that is the subject of an adversarial proceeding.") (quoted in Mot. at 5). Simply put, Napout will not be denied access to the Warrants and the cases he cites have no bearing on whether the Court property granted the Challenged Orders, which simply defer their disclosure.

Later in his motion, Napout appears to acknowledge that the Challenged Orders do not actually deny access to the Warrants when he argues in the alternative that the Court should "reconsider the current disclosure date" for the Warrants because "it will be impossible for Mr. Napout to analyze, investigate and challenge any deficiencies in the warrants because the disclosure date currently set by the Court is one month after motions to suppress are due" and "the current disclosure date set by the Court prohibits him from exercising his Fourth Amendment rights." Mot. at 15-16. As set forth in the Ex Parte Applications, the government specifically sought to defer disclosure only until three months prior to the start of jury selection for the express purpose of providing the defendants with sufficient time to file any motions to suppress. Indeed, as the government informed counsel for Napout before the instant motion was filed, the government agrees that the defendants should be given the opportunity to file any appropriate motions after disclosure of the Warrants. The government respectfully submits that, to allow the parties to plan accordingly, the Court should now add to the current pretrial schedule a deadline for motions to suppress the results of these searches.

10

B.  The Court Relied On Sufficient Factual Bases For the Challenged Orders

Napout also attacks the factual bases of the Ex Parte Applications by affirmatively asserting that "the government has no credible evidence that any witness or witness's family member is in danger or has been threatened," and that "the government cannot credibly claim that the investigation is truly ongoing at this stage." See Mot. at 7, 11-12.  As support, Napout cites several cases for the proposition that "conclusory speculation" by the government is insufficient for deferred disclosure.  See Mot. at 9 and 12.  Needless to say, Napout's motion does not address the detailed bases for deferred disclosure provided by the government in the Ex Parte Applications.  As Napout concedes, his assumptions about the government's ongoing investigation and the risks to witness safety are based on the content of the government's opposition to Napout's motion for a bill of particulars.  Id. at 8. Napout goes so far as to assert that, because the government did not detail any specific risks or threats to witnesses in that submission, the Court should conclude that "no such evidence exists." Id.

As the Court properly determined after review and consideration of the Ex Parte Applications, the government has established the need for deferred disclosure in this case.  With regard to the government's brief on the defendant's motion for a bill of particulars, the government certainly was not required to detail in a public filing information concerning specific threats to witnesses and thereby increase the risk to their safety.  This is especially true given that Napout's request for the identities of witnesses was legally meritless.  See Memorandum and Order dated February 17, 2017 (Dkt. No. 542), at 21 ("Although Napout might like to know now what witnesses and documents the Government

11

intends to present at trial, the Federal Rules of Criminal Procedure do not entitle him to that information at this juncture.").[6] In short, Napout's arguments and case citations do not address the situation presented here, where the government did provide a detailed factual bases – not "conclusory speculation" – in the Ex Parte Applications filed in accordance with Rule 16(d)(1). The Court properly considered those bases and made specific, on the record findings in support of the Challenged Orders.[7]

\* \* \*

In summary, the Court properly ordered the deferred disclosure of the properly sealed Warrants upon the bases set forth the Ex Parte Applications, namely to avoid jeopardizing the safety of witnesses and the integrity of the government's ongoing investigation. The Challenged Orders do not prejudice the defendants, who will have a sufficient opportunity before trial to review the Warrants and file any motions relating to the admissibility of evidence obtained from the searches.

---

[6] The Court denied in part and granted in part Napout's motion for a bill of particulars. See id. at 21-22. In accordance with the Court's ruling, the government filed a bill of particulars on March 10, 2017 (Dkt. No. 550), in which it listed the particular tournaments, tournament editions, and related contracts that were tainted by Napout's own conduct, as well as those tainted by the conduct of each of the other four defendants then before the Court. In its ruling, the Court held that Napout is not entitled to a list of witnesses or unnamed co-conspirators. See id.

[7] The government also opposes disclosure of redacted versions of the Warrants at this time. See Mot. at 15. Any such redaction would have to be extensive to avoid disclosure of the identities of the witnesses and the nature of the government's ongoing investigation, such that the disclosures would not enable Napout to understand or challenge the court's probable cause findings. Cf. Amodeo II, 71 F.3d at 1048 ("release of the redacted version of Part 1 of the Report either would provide little meaningful information to the public because the redactions are so extensive or might . . . cause the confidential sources to be identified.").

CONCLUSION

For the reasons set forth above and in the Ex Parte Applications, the government respectfully submits that the defendant's motion is without merit and should be denied in its entirety.  In addition, the government respectfully requests that the Court add to the current pretrial schedule a deadline for motions to suppress the results of the searches.

Dated: Brooklyn, New York
      June 15, 2017

                              Respectfully submitted,

                              BRIDGET M. ROHDE
                              ACTING UNITED STATES ATTORNEY
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

Samuel P. Nitze
M. Kristin Mace
Keith D. Edelman
Assistant United States Attorneys
      (Of Counsel)