SPN/MKM:KDE
F.#2015R00747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

       - against -                Docket No. 15–CR-252 (S-2) (PKC)

JUAN ÁNGEL NAPOUT,
MANUEL BURGA, and
JOSÉ MARIA MARIN,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

REPLY IN FURTHER SUPPORT OF THE GOVERNMENT'S
MOTION FOR A PARTIALLY ANONYMOUS AND SEMI-SEQUESTERED JURY

                                      BRIDGET M. ROHDE
                                      ACTING UNITED STATES ATTORNEY
                                      Eastern District of New York
                                      271 Cadman Plaza East
                                      Brooklyn, New York 11201

Samuel P. Nitze
M. Kristin Mace
Keith D. Edelman
Assistant U.S. Attorneys
    (Of Counsel)

The government respectfully submits this reply in further support of its motion for a partially anonymous and semi-sequestered jury, dated September 1, 2017 (ECF Dkt. No. 652), and in response to the memoranda in opposition filed by defendants Juan Ángel Napout, dated September 18, 2017 (ECF Dkt. No. 664) ("Napout Opp'n"), José Maria Marin, dated September 15, 2017 (ECF Dkt. No. 662) ("Marin Opp'n"), and Manuel Burga, dated September 18, 2017 (ECF Dkt. No. 665) ("Burga Opp'n"). In their opposition papers, the defendants do not dispute that media attention from the domestic and international press during the course of the trial is likely to be extensive, nor do they challenge the government's factual assertions relating to instances of witness intimidation in the case. Instead, the defendants argue principally that press attention on its own is insufficient to warrant partial anonymity of the jury and that the incidents of obstructive conduct documented thus far in the case are insufficiently tied to the trial defendants to factor in the Court's analysis. The defendants' arguments fail to account for the risks posed by the anticipated press coverage and the significance of defendant Napout's attempted obstruction of justice, as well as the instances of witness intimidation. For these reasons as well as those set forth in the government's motion, the government respectfully submits that the motion should be granted.

I.  The Defendants Do Not Dispute the Likelihood of Extensive Media Attention

In their memoranda, the defendants raise multiple arguments in opposition to the government's motion for a partially anonymous and semi-sequestered jury.[1] The defendants do

---

[1] Unfortunately, the government must once again address a mischaracterization of the government's position by counsel for Napout. Napout's opposition brief opens with the statement that a prosecutor "frankly conceded that the government cannot prove that any of the three defendants who are going to trial has engaged—or is likely to engage—in witness tampering, jury-misconduct activity, or any similar attempts to skew the upcoming trial." Napout Opp'n at 1 (emphasis in original). The statement is false. In an effort to narrow the issues that require judicial attention, the government offered to speak with defense counsel about its anticipated motion prior to filing. During the call, the government stated that it would not

1

not, however, dispute that the domestic and international media attention likely to surround the trial will be extensive. See Napout Opp'n at 3, 12 (arguing only that "[p]ress attention, such as it may be during this trial," and "publicity—even if extensive" cannot alone support empanelment of an anonymous jury); Marin Opp'n at 3 (arguing only that "it is clear that the mere fact that a trial may receive a great deal of press attention" is insufficient to justify use of an anonymous jury); see also Burga Opp'n (arguing only that the empanelment of an anonymous and semi-sequestered jury will unduly prejudice the defendants without contesting the likely extent of the media attention). Nor do they dispute that the press attention thus far has been particularly intrusive, including reports on personal information about perceived witnesses that could put those individuals at risk.

      Marin argues instead that "[w]ithout excusing any such alleged conduct," such press activity does not indicate the need to protect the jury because it concerns "'alleged co-conspirators,' not jurors." Marin Opp'n at 8. While it is true that the press has not yet had an opportunity to report on the jury, when, as here, extensive media attention is likely to surround the trial, "[t]he prospect of publicity militates in favor of jury anonymity to prevent exposure of the jurors to intimidation or harassment." United States v. Wong, 40 F.3d 1347, 1377 (2d Cir. 1994). It is not a "leap in logic" or "conjecture" to think that pre-trial publicity evinces a need to protect the jury. See Marin Opp'n at 9. It is the application of well-settled Second Circuit law. See, e.g., United States v. Paccione, 949 F.2d 1183, 1193 (2d Cir. 1991) (affirming use of an anonymous jury where, among other things, the case had been "front-page news and [] the trial

---

assert in its motion that the trial defendants directed the instances of witness intimidation set forth in the government's sealed supplement. The government said nothing about what it could or could not prove or about its view of the defendants' likely behavior leading up to and during trial, except to note that it did intend to argue in its motion that Napout had attempted to obstruct the government's investigation (and thus the resulting trial).

could be expected to be the subject of extensive publicity, exposing the jurors to inappropriate contacts that could compromise the trial"); see also United States v. Kadir, 718 F.3d 115, 121 (2d Cir. 2013) (observing that "extensive media coverage" is a "significant" factor in considering whether to empanel an anonymous jury) (citing Wong).

Alternatively, Marin presses the novel argument that the government has "courted the press in this case" and thus should not "benefit from that coverage as a basis for seeking an anonymous jury." Marin Opp'n at 5. This argument suffers from numerous flaws, including that the government does not "benefit" from the use of a partially anonymous and semi-sequestered jury (and accompanying neutral explanations). Rather, it seeks to guarantee the jurors' impartiality and avoid disruption during the trial while still ensuring that the defendants' rights are not infringed. More significantly, Marin cites no legal authority for his theory that the interest in protecting a jury from intense and intrusive press coverage is somehow undermined by the government's having informed the public through press conferences and other means of the filing of public charges. The question before the Court is whether there is "strong reason" to think the jury needs protection. United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012). In this case, there is.[2]

---

[2] Even if it were legally appropriate to consider, it is impossible to determine what effect, if any, the government's public remarks have had on the overall amount of media attention. Indeed, the world's interest in corruption in international soccer pre-dated the unsealing of the first indictment, and, "given the global interest in soccer," Marin Opp'n at 5, extensive press coverage surely would have surrounded the case even if the government had not made limited public remarks. Moreover, the intrusive nature of some of the press reports certainly cannot be blamed on the government, especially in light of the fact that the government has sought and obtained, where appropriate, orders preventing public disclosure of information that might put specific individuals at risk. See, e.g., Gov.'s Ltr. in Resp. to Bloomberg News' Mot. to Unseal, dated April 4, 2016 (ECF Dkt. No. 293); Gov.'s Ltr. in Resp. to Buzzfeed News' Motion to Unseal, dated July 19, 2016 (ECF Dkt. No. 369); Gov.'s Opp'n to Mot. to Vacate, dated June 15, 2017 (ECF Dkt. No. 607).

In short, the undisputed nature and extent of the press attention to date strongly counsel in favor of the empanelment of a partially anonymous and semi-sequestered jury.

II.  The Defendants Ignore the Importance of Napout's Obstructive Conduct

The defendants' primary argument in response to the government's motion is that, even though the extensive media attention may weigh in favor of a partially anonymous and semi-sequestered jury, that alone cannot warrant such relief because the government has not proffered evidence indicating that the instances of witness intimidation detailed in the sealed supplement were directed by the three trial defendants. See Napout Opp'n at 9-10; Marin Opp'n at 10-11.  This fails to recognize the significance of defendant Napout's attempt to obstruct justice and the instances of witness intimidation in the case.

Napout takes issue with the government's "threadbare" description, as he puts it, of his obstructive conduct, Napout Opp'n at 1, ignoring the specific facts in the sealed record, including in the affidavit in support of the warrant to search Napout's electronic devices, which the defendants have had since August 7, 2017, and which Napout could have addressed under seal had he chosen to do so.  See generally Mem. & Order Denying Napout's Motion to Vacate Deferred Disclosure Orders, dated July 14, 2017 (ECF Dkt. No. 624); see also Amended Order Denying Motion to Vacate Protective Order, dated Sept. 19, 2017 (observing that the government has proffered evidence of Napout's "efforts to obstruct justice . . . of which Napout is aware").

Avoiding the substance of his attempt to obstruct justice, Napout asserts that only witness or jury tampering (and not other forms of obstruction of justice) support protective measures of the sort sought by the government.  See Napout Opp'n at 3-4.  "[T]o support a finding that an anonymous jury is warranted," however, a prior obstruction of justice "need not relate to prior jury tampering efforts, but instead may relate solely to efforts to tamper with

4

witnesses <u>or otherwise obstruct the judicial process</u>." <u>United States v. Prado</u>, No. 10-CR-74 (JFB), 2011 WL 3472509, at *3 (E.D.N.Y. Aug. 5, 2011) (emphasis added). Such obstruction may include the destruction of evidence. See <u>United States v. Pugh</u>, 150 F. Supp. 3d 218, 225 (E.D.N.Y. 2015) (empaneling anonymous and semi-sequestered jury where, among other things, the defendant was charged with obstructing an official proceeding by destroying evidence because, "especially in conjunction with other factors, there is no requirement that a defendant's contempt for the judicial process rise to the level of murder or outright juror intimidation before an anonymous jury is justified"); <u>United States v. Locascio</u>, 357 F. Supp. 2d 558, 562 (E.D.N.Y. 2005) (holding that a co-conspirator's "disposing of evidence" "contributes to the totality of circumstances supporting the government's application" for an anonymous and semi-sequestered jury); <u>see also</u> <u>United States v. Ashburn</u>, No. 13-CR-303 (NGG), 2014 WL 5800280, at *8 (E.D.N.Y. Nov. 7, 2014) (finding that conduct demonstrating lack of respect for the judicial process—including refusal to allow execution of a search warrant to collect DNA—"suggests there is a serious need to protect the jury").[3]

        For this reason, the defendants' reliance on the principle that an anonymous jury is not justified based solely on the "[m]ere invocation of words such as 'organized crime,'" Marin Opp'n at 13, or by "trot[ting] out a frightening shibboleth," Napout Opp'n at 7, is misplaced. The government is not relying solely on the media attention likely to surround this case or the defendants' participation in an international racketeering conspiracy. The government has proffered evidence that one of the defendants has engaged in deliberate conduct

---

[3] Marin does not address the substance of the obstruction allegations against Napout, instead arguing that it is "inconceivable that it has any relevance to whether a defendant here would try to compromise a juror." Marin Opp'n at 4-5, n.2. Napout's misconduct reveals a willingness to remove evidence to prevent a successful prosecution. This, in conjunction with the other facts set forth in the government's motion, provides more than a sufficient basis upon which to find that the jury requires protection. See <u>Pugh</u>, 150 F. Supp. 3d at 225.

intended to prevent the U.S. government from obtaining evidence to be used against him. Such conduct, in combination with the instances of witness intimidation set forth in the sealed supplement, strongly supports the juror protections requested by the government.

III.     The Instances of Witness Intimidation Further Support the Requested Relief

The defendants' attempts to discount the instances of witness intimidation in the sealed supplement are also unpersuasive.

First, counsel for Napout inaccurately states that these examples are "prior acts of admitted conspirators who are now cooperating with the government," Napout Opp'n at 1, a bit of speculation that is both factually inaccurate and, as an inference, unsupported by the government's motion. All of the instances of intimidation described in the sealed supplement were inflicted on, not by, potential government witnesses.

Second, the defendants assert that the Court should disregard entirely the instances of witness intimidation because the government does not proffer evidence that the defendants directed such misconduct. But the defendants need not have directed such acts for them to be relevant to the present inquiry. See United States v. Kaziu, 559 F. App'x 32, 37 (2d Cir. 2014) (summary order) (affirming district court's empanelment of anonymous jury because of, among other things, an "online commenter's suggestion that force be used to free [the defendant] from custody"); Paccione, 949 F.2d at 1193 (affirming district court's empanelment of an anonymous jury because, among other things, "a government witness had recently received a middle-of-the-night anonymous telephone call telling him that he would be safe so long as he 'remembered nothing'").[4] The Court may properly consider the examples set forth in the sealed

---

[4] Napout's and Marin's reliance on United States v. Gambino, 818 F. Supp. 536 (E.D.N.Y. 1993), and United States v. Eppolito, No. 05-CR-192 (JBW), 2006 WL 220061 (E.D.N.Y. Jan. 30, 2006), is also misplaced. See Napout Opp'n at 5-6; Marin Opp'n at 3-5, 11, 14-15. In Eppolito, the court discounted the allegations of the defendants' "tampering,

6

supplement in considering whether there is strong reason to believe that the jury needs protection.

IV.  The Jurors Are Presumed to Follow the Non-Prejudicial Explanations Given by the Court

The defendants' final objection to the government's motion is that the relief sought will unfairly prejudice the defendants. See Napout Opp'n at 7 & n.1 (arguing that partial anonymity and semi-sequestration will cause the jurors to "understand that there is something very different about a trial in which they are maintained under close watch by United States Marshals[]"); Marin Opp'n at 12-15 (arguing that "no matter the explanation given to the jury for the measures suggested by the government—in particular the transportation to and from the courthouse by the U.S. Marshals service—they will inevitably be left with the concern that these defendants are dangerous people"); Burga Opp'n at 3 (asserting that the explanation that the jury will be transported to and from the courthouse "in order to 'protect their privacy' offers little assurance to these defendants that the procedures sought by the government will not prejudice them in the eyes of the jury").

This argument runs contrary to the settled rule that a "jury is presumed to follow its instructions." Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)). In the anonymous jury context, "the Second Circuit 'has repeatedly held that a defendant's presumption of innocence is properly maintained where the court gives a neutral and non-prejudicial explanation to the jury regarding the need for anonymity.'" Pugh, 150 F. Supp. 3d at 226 n.2 (quoting Prado, 2011 WL 3472509, at *9). As set forth in the

---

retaliation, and obstruction of justice" because they all occurred more than 15 years' prior. 2006 WL 220061, at *2. In Gambino, the court noted that the case had attracted "virtually" no publicity and there was no evidence that any of the defendants "directed efforts to obstruct justice, tamper with juries or intimidate witnesses." 818 F. Supp. at 540. Here, Napout's obstruction, as well as all of the instances of witness intimidation detailed in the sealed supplement, occurred after the first indictment was unsealed on May 27, 2015.

7

government's motion, the Court may instruct the jury that the procedures are designed to protect the jurors' privacy from inquiries by the media, an instruction consistently upheld by the Second Circuit as adequately protecting the defendants' rights.[5] See, e.g., Paccione, 949 F.2d at 1193 (2d Cir. 1991) ("The court also adequately instructed the jury at the outset of the trial that the special precautions were designed to protect the jury from contacts by the media, thereby implying that the security measures were not the result of threats from the defendants.").

Furthermore, the defendants' specific attempts to avoid this well-established law are unpersuasive. Marin's citation to the juror handbook for the Eastern District of New York, see Marin Opp'n at 13, and Burga's recitation of "psychological research" in a treatise, Burga Opp'n at 3-4, cannot override settled Second Circuit authority.[6]

---

[5] Napout also asserts that the government's request that the jury only be "partially" anonymous (i.e., anonymous as to the press and public but not the government, the defendants, or their U.S.-based counsel) will not mitigate any prejudicial effects. Napout Opp'n at 7 n.1. Although he does not dispute that this guarantees his ability to conduct a meaningful voir dire, he argues that the fact that "the lawyers or clients secretly have access to the names makes no difference whatsoever to the level of prejudice suffered by the defendant." Id. The government did not request that the jury be misled and does not object to the Court instructing the jurors that their identities will be known to the government and the defendants and their counsel, but that they will be anonymous as to the press and public.

[6] The defendants' citations to ABC, Inc. v. Stewart, 360 F.3d 90 (2d Cir. 2004), and United States v. Quattrone, 402 F.3d 304 (2d Cir. 2005), are similarly inapposite. See Napout Opp'n at 12; Burga Opp'n at 4. In those cases, certain news organizations raised First Amendment challenges to the district court's actions, including conducting voir dire in a closed proceeding in the court's robing room (in Stewart) and imposing prior restraint on publishing the names of a non-anonymous jury (in Quattrone). Here, there are no First Amendment challenges before the Court. And neither of those cases involved obstruction of justice or witness intimidation. Indeed, in Quattrone, the Second Circuit recognized that use of an anonymous jury (rather than forbidding publication of publicly available information) was an appropriate alternative that might have properly balanced the need to preserve the integrity of the trial with the press's First Amendment interest in reporting on public proceedings. See 402 F.3d at 311.

V.  Conclusion

For the reasons set forth above and in its motion, the government respectfully requests that the Court empanel a partially anonymous and semi-sequestered jury.

Dated:  September 21, 2017
        Brooklyn, New York

                                Respectfully submitted,

                                BRIDGET M. ROHDE
                                Acting United States Attorney,
                                Eastern District of New York

                        By:            /s/
                                Samuel P. Nitze
                                M. Kristin Mace
                                Keith D. Edelman
                                Assistant United States Attorneys
                                (718) 254-7000

9