

**Hughes Hubbard & Reed**

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

November 5, 2018

The Honorable Pamela K. Chen
U.S. District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *United States v. Juan Ángel Napout* (1:15-cr-00252)

Dear Judge Chen:

On behalf of defendant Juan Ángel Napout, we submit this response to restitution requests by (1) FIFA, CONCACAF, and CONMEBOL (together the "Organizations") for legal fees, and (2) FIFA and CONMEBOL for expense reimbursements.

## LEGAL FEE REQUESTS

The Organizations' requests for legal and vendor fees should be denied.[1]

As set forth in Mr. Napout's Memorandum concerning Restitution (ECF No. 1026), the Mandatory Victims Restitution Act (18 U.S.C. § 3663A) ("MVRA"), as interpreted in *Lagos v. United States*, 138 S. Ct. 1684 (2018), does not permit restitution for legal fees to outside counsel even if those fees were incurred at the behest of the government. The Supreme Court warned that allowing restitution for such legal fees would invite "disputes as to whether particular expenses 'were in fact necessary.'" *Id.* at 1689. In such circumstances, a "district court might, for example, need to decide whether each witness interview and each set of documents reviewed was really 'necessary' to the investigation." *Id.* "Such disputes may become burdensome in cases involving multimillion dollar investigation expenses for teams of lawyers and accountants." *Id.* These concerns are manifested here.

---

1. In particular, FIFA seeks CHF 27,808,463.93 in legal fees, CONCACAF seeks $1,887,797.03, and CONMEBOL seeks $685,303.50.

Honorable Pamela K. Chen 2
November 5, 2018

The Organizations have submitted nearly 700 pages of invoices containing thousands of billing entries from teams of lawyers and accountants. Many of the billing entries are generic and make it impossible to determine the specific task at hand, much less whether that task was "in fact necessary." Indeed, CONCACAF and FIFA are together claiming over $400,000 for restitution for legal fees spent advocating for the amount of restitution they are seeking. Congress could not have intended this result. *See id.*

Even assuming certain legal fees are recoverable under the MVRA, the fee requests must be for work tethered to the offense of conviction. Under 18 U.S.C. § 3664(h), the Court may only impose restitution for losses caused by the defendant or by the "reasonably foreseeable" acts of his co-conspirators. *United States v. Smith*, 513 Fed. Appx. 43, 45 (2d Cir. 2013); *United States v. Castillo*, 186 Fed. Appx. 25, 27 (2d Cir. 2006). Many of the Organizations' claims cannot meet this burden.

A. **The Organizations' requests should be denied in whole or in part.**

The legal fee requests must be denied on various grounds, including: (i) the fees were incurred for work not done at the government's request; (ii) the fees were incurred for work unrelated to the offense conduct underlying Mr. Napout's conviction; (iii) the fee descriptions are too vague or generic to determine recoverability; and (iv) the fees are excessive or unnecessary.

1. FIFA

FIFA has refused to revise its fee request in any manner, as it still seeks close to CHF 28 million.

(a) Costs of Internal Investigations

FIFA cannot recover the costs of its investigations as those fees were neither incurred at the behest of the government nor tied to the schemes for which Mr. Napout was convicted, and in any event are excessive.

*First*, the fees claimed by FIFA were not incurred at the behest of the government, and FIFA does not identify any work (apart from the trial) that FIFA "would not have undertaken but for the government's request." *See* 10/9/18 Order. The Burck Declaration[2] states that FIFA started its investigation shortly after the May 2015 indictment was unsealed, and Quinn Emanuel subsequently "requested guidance from the Government" on what subject matters it should focus its investigation. Burck Dec. ¶¶ 2–4. FIFA does not and cannot assert that the government instructed it to conduct an internal investigation. Rather, when asked by FIFA what FIFA's priority in the investigations should be, the government suggested that FIFA prioritize the 2010 FIFA World Cup in South Africa. *Id.*

---

2. FIFA Oct. 25, 2018 Letter Ex. A, October 25, 2018, Declaration of William A. Burck ("Burck Dec.").

Honorable Pamela K. Chen 3
November 5, 2018

Significantly, "FIFA acknowledges that in investigating topics identified by the Government and producing relevant documents, FIFA was motivated, at least in part, by a desire to demonstrate its cooperation, preserve its victim status, and avoid prosecution in any future indictment." FIFA Oct. 25 Letter at 2. Thus, this is not a case where the government approached a victim and asked it to conduct an investigation, but rather where "FIFA proactively approached the Government to open a dialogue after the Indictment was unsealed." FIFA Oct. 25 Letter at 3. A corporation acting out of self-preservation cannot turn around and have its costs reimbursed through restitution.[3]

FIFA also concedes that it seeks CHF 1,725,670.00 in fees incurred generating reports for the Swiss government. Such work clearly was not at the U.S. government's request, or necessary for the prosecution of this case. *See, e.g.*, Burck Dec. ¶ 47 ("in response to follow-up questions from the Swiss authorities and new documents provided by key witnesses, Quinn Emanuel revised the Investigative Reports and transmitted final copies to the Swiss authorities in March 2017").

*Second*, as FIFA's request makes clear, the bulk of FIFA's investigative costs relate to the 2010 World Cup, although FIFA makes reference to six additional unidentified workstreams. *See* Burck Dec. ¶¶ 5, 7. The 2010 World Cup scheme took place years before Mr. Napout joined CONMEBOL or FIFA, and there was no evidence presented at trial that Mr. Napout was involved in or knew of these events. Indeed, the 2010 World Cup site selection scheme is not referenced in the Second Superseding Indictment which formed the basis of Mr. Napout's trial. Because these costs were not caused by Mr. Napout or the reasonably foreseeable acts of his alleged co-conspirators, FIFA is not entitled to restitution for legal fees related to these schemes.

*Finally*, even if the Court believes that FIFA is entitled to some of these legal fees, the fees are excessive and so vaguely described in the materials as to make it impossible to determine whether they should be subject to restitution. Indeed, FIFA, by seeking $28 million in legal fees from Mr. Napout but only $120,000 in alleged non-fee losses from him, has put a spotlight on the absurd nature of the fee request. FIFA has had ample opportunities, and has failed, to demonstrate recoverable legal fees from its investigations.

(b) <u>Legal Fees for Preparation of Trial Documents and Witness</u>

FIFA seeks over CHF 28,000 for trial preparation. The sole FIFA witness testified for approximately 30 minutes on the first day of trial. Yet, a Quinn Emanuel associate charged over CHF 4,500 to observe that day's trial and write a summary of it. *See* FIFA Oct. 25 Letter Ex. B at Bates No. FIFA_RES_00244. FIFA also seeks thousands of dollars for reviewing and analyzing Executive Committee minutes even though there is no clear evidence that the government requested that work. Similarly, FIFA's review of court filings appears unnecessary

---

3. Barring such restitution would be consistent with Second Circuit law that the MVRA does not contemplate restitution for coconspirators. *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006) ("[A]ny order entered under the MVRA that has the effect of treating coconspirators as 'victims,' and thereby requires 'restitutionary' payments to the perpetrators of the offense of conviction, contains an error so fundamental and so adversely reflecting on the public reputation of the judicial proceedings that we may, and do, deal with it *sua sponte*.").

Honorable Pamela K. Chen  4
November 5, 2018

to the government's trial presentation. FIFA's request for trial preparation fees should be revised accordingly.

       (c)  Legal Fees for Attorney to Attend Trial after its Witness Testified

FIFA still seeks to recover CHF 105,000 for having attorneys sit through or review updates about the entire six-week trial, ignoring the Court's view of the request at the last hearing: "I am dubious about that proposition because, while a victim has the right to attend the trial and a victim's attendance at the trial that is necessary can be covered by the MVRA, attending every day of a six-week trial, someone is going to have to convince me that was somehow necessary." Oct. 4, 2018 Hearing Tr. ("Hearing Tr.") at 92. FIFA cites no case or other compelling factor to justify such a request.

       (d)  Legal Fees for Claiming Restitution

FIFA seeks CHF 80,888.98 in restitution for legal fees incurred while attempting to claim restitution. Even assuming the MVRA permits such a category of fees, much of the work done by FIFA in seeking restitution was unnecessary. FIFA has sought $28 million dollars in fees without any support of the government. If the Court denies these restitution claims, FIFA should not be able to seek restitution for the legal fees chasing after them. Moreover, FIFA could not have expended significant attorney fees in seeking to recover approximately $120,000 in alleged losses caused by Mr. Napout.

    2.  CONCACAF

CONCACAF's claims for restitution totaling over $1.3 million for legal fees and nearly $140,000 in fees for vendor services should be denied.[4]

       (a)  Costs of Internal Investigation

The scope of CONCACAF's internal investigation was far wider than the two schemes for which Mr. Napout was convicted. Among other things, CONCACAF investigated two Gold Cup bribery schemes (one of which ran from 1992 through 2003). There has been no allegation that Mr. Napout had any awareness of either scheme, and thus losses from those schemes were not caused by Mr. Napout or the reasonably foreseeable acts of his alleged co-conspirators. CONCACAF's invoices identify over 20 individuals who were the subject of its internal investigation, but do not identify Mr. Napout a single time. In fact, of the more than 1,100 billing entries, only four mention the Copa America. *See* CONCACAF Oct. 25. Letter Exs. A & B. It is difficult, if not impossible, to determine what portion of CONCACAF's

---

4. It appears that the fees of Conselio, Berkeley Research Group and BDO also were incurred as part of CONCACAF's broad internal investigations. *See* CONCACAF Oct. 25, 2018 Letter (ECF No. 1063) Exs. A, B, C, D & E.

Honorable Pamela K. Chen  5
November 5, 2018

investigation fees might relate to Mr. Napout's alleged offense conduct.[5] Consequently, the fee request should be denied.

Even assuming CONCACAF can recover for legal fees unrelated to Mr. Napout's convictions, some of CONCACAF's billing entries are simply too vague to parse. *See, e.g.* CONCACAF Oct. 25 Letter Ex. A (11/19/2012 Entry of William D. Kerr: $243.75 for "Note to team"; 3/22/2013 Entry of Pouneh Aravand: $1348.75 for "Review documents for privilege"). CONCACAF should not be able to claim restitution when it is unclear the purpose or topic of its legal work.[6] Likewise, the billing descriptions in some of CONCACAF's vendor invoices do not provide sufficient information to determine what task the vendor was working on or even services were provided. CONCACAF should not be able to recover for fees that is has not demonstrated were related and necessary to the prosecution of the charged conduct.

(b)  Legal Fees for Claiming Restitution

CONCACAF seeks $405,000 in fees and expenses just for its submissions concerning restitution. Even if such fees are generally permissible under the MVRA, CONCACAF's request is excessive.

*First*, CONCACAF should not be able to collect any legal fees or expenses associated with its expert. *See* CONMEBOL Oct. 25 Letter Exs. F & G. Even the government viewed the expert as unnecessary and irrelevant to the proceedings.[7]

*Second*, CONCACAF should not be awarded legal fees for its original and unsuccessful attempt to seek more than $45 million in restitution combined in purported contractual losses and legal fees. *See* CONCACAF Sept. 7, 2018 Letter (ECF No. 1013). Only after the defense challenges to these claims has CONMEBOL revised its claim down to approximately $4.5 million combined (or approximately 10% of its initial ask). CONCACAF's fee request should be similarly discounted, as CONCACAF should not be able to receive legal fees for restitution requests that it has either withdrawn or the Court ultimately denies.

*Third*, Sidley Austin's rates for seeking fees for restitution averaged $869 an hour, nearly 70% higher than the average rate charged for the internal investigation detailed in Exhibit

---

5. Mr. Napout renews his objection to the lack of disclosure about the government's requests to the Organizations. Absent such information, Mr. Napout has no ability to challenge whether any particular time entry responds to a government request, or whether any particular request or response relates to the offense conduct underlying the charges against Mr. Napout.

6. Roughly $150,000 worth of billing entries do not even reference the DOJ's investigation. *See* CONCACAF Oct. 25, 2018 Letter Exs. A & B. In addition, there are numerous entries for a "taint review," and it is unclear how such a review relates to the prosecution of the charges against Mr. Napout.

7. Mr. Nietze stated at the hearing: "I guess what the Government is not so clear about is if this expert is just going to testify that the rights that came back through the revised contract came back damaged, the tournament's prestige had been damaged, we had to hustle against the clock, whatever that is, and if all those things hadn't been true we would have been able to mitigate even further, what does that have to do with loss amount?" Hearing Tr. at 13.

Honorable Pamela K. Chen  6
November 5, 2018

A ($515 an hour). This is because a disproportionate amount of the work was done by partners and senior associates. CONCACAF should not receive fees at these average rates, but rather at the average rates which Sidley Austin provided CONCACAF legal services throughout the internal investigation. *Finally*, Sidley Austin's fees are excessive with respect to the number of lawyers and the work included in the fee request. CONCACAF is charging for at least six lawyers to work on the restitution submission, and for three lawyers, including two partners, to attend the restitution hearing. In fact, on two different dates (August 17 and 21, 2018), Sidley Austin is charging for having 6 attorneys on a telephone call. Among the tasks included in Sidley Austin's fee requests are the following descriptions: "update calendar invites"; "discuss folder reorganization"; "update docket tracker"; "update shared drive"; "chasing trial transcript"; "attention for finding coverage for Napout sentencing"; "manage case files"; and calls to coordinate with Quinn Emanuel. The Court should deny CONCACAF's request for fees for these and similar tasks.

        3.     CONMEBOL

            (a)     Legal Fees for the Internal Investigation

CONMEBOL's claims for restitution for legal fees should be reduced. *First*, some of CONMEBOL's entries make clear that the work was done as part of an internal investigation, as opposed to responding to government requests. *See* CONMEBOL Oct. 25 Letter Ex. A (e.g. 5/20/2016 Entry of BAO: $1,342.50 for "Prepare cover letter for production to DOJ; *correspondence re next steps in internal investigation.*" (emphasis added); 7/28/2016 Entry of BAO: $3,222 for "Prepare letter to DOJ; TCs re same; *prepare updated workplan re internal investigation.*" (emphasis added)). However, the entries do not identify whether that work would not have been undertaken in the absence of the government's request. As this Court has required the Organizations to establish that the requested legal fees would not have been incurred "but for" the government's request, these time entries must be denied.

*Second*, a number of CONMEBOL's entries, including those portions of CONMEBOL's entries that reference its own internal investigation, do not make clear that the work done was related to the schemes for which Mr. Napout was convicted, and thus must be denied as well. *See id.* (e.g. 5/20/2016 Entry of GS: $4,838 for "Prepare production letter to DOJ; Produce documents to DOJ."). Finally, some of the entries provide no basis to determine that they relate to the government's investigation at all, and thus must be denied. *See id.* (e.g. 9/29/2016 Entry of GS: $3,089.50 for "Review CONMEBOL Documents.").

            (b)     Legal Fees related to the Common Interest Privilege Claim

CONMEBOL is not entitled to the legal fees it seeks relating to Mr. Napout's claim of a common interest privilege. In its August 15, 2018 letter, CONMEBOL argued that Mr. Napout used the common interest agreement to protect himself from prosecution and "victimize" CONMEBOL. CONMEBOL Aug. 15, 2018 Letter at 12 (ECF No. 989). Yet, Magistrate Judge Levy did not find that Mr. Napout or his counsel had acted in bad faith or attempted to "victimize" CONMEBOL, merely that the claim of common interest was unwarranted. *See* 3/10/17 Order (ECF No. 549). And the common interest privilege was intended to be limited to work done renegotiating commercial contracts affected by the May 2015 indictment. *Id.* at 3–4. It was not an attempt to join forces for purposes of the criminal

investigation, much less to thwart that investigation. In fact, common interest privilege arrangements are commonly formed among subjects of criminal investigations. Courts should not penalize a defendant for asserting a privilege, even if the Court ultimately overrules that privilege assertion, by imposing restitution in connection with such an assertion. The Court should reject CONMEBOL's request for over $300,000 in fees incurred during the privilege dispute.

## EXPENSE REIMBURSEMENTS

FIFA and CONMEBOL has each failed to connect purported expense payments with the offense conduct.

FIFA seeks $121,446.30 for trip expenses paid to Mr. Napout. FIFA Aug. 15, 2018 Letter at 7 (ECF No. 988). In its four submissions to date, however, FIFA has made no attempt to connect any of these payments to Mr. Napout with Mr. Napout's offense convictions. Absent a connection between the payments and the offense conduct, the restitution request must be denied. *See* Hearing Tr. at 95–97 (discussing *United States v. Donaghy*, 570 F. Supp. 2d 411 (E.D.N.Y. 2008), *aff'd sub nom. United States v. Battista*, 575 F.3d 226 (2d Cir. 2009)).

CONMEBOL seeks $105,000 purportedly "for trips that Napout took while actively engaging in the conspiracy of which he has been convicted." CONMEBOL Oct. 11, 2018 Letter at 3 (ECF No. 1052). In its initial restitution submission, CONMEBOL did not identify these payments as trip expenses. *See* CONMEBOL Aug. 15, 2018 Letter (ECF No. 989). While it characterizes these payments as trip expenses now, it provides no support to demonstrate that any payments were made in connection with a trip, or anything else for that matter. CONMEBOL still fails to provide any underlying documentation for these payments. Rather, CONMEBOL only provides a single page summary from a consulting report, in which Mr. Napout is listed in a column having received $105,000, with no detail, no explanation, and no supporting documentation. *See* CONMEBOL Oct. 11, 2018 Letter Attachment A (describing the amount listed under Mr. Napout's name as the "Total according to SWIFT (international transfer) and SIPAP whose beneficiaries are officials *or whose descriptions have a reference to an official*.") (emphasis added) The sole reference to Mr. Napout on the summary page does not state that the amount was paid to Mr. Napout in connection with trips. CONMEBOL' restitution request, which lacks even the barest of details, must be denied.

## CONCLUSION

Mr. Napout respectfully requests that the Court deny the Organizations' requests for legal fees, and deny all of FIFA's and CONMEBOL's requests for reimbursements for travel and other expenses.

Respectfully submitted,

Marc A. Weinstein

cc: All counsel of record via ECF