**Hughes**
**Hubbard**
**& Reed**

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

January 31, 2019

The Honorable Pamela K. Chen
U.S. District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *United States v. Juan Ángel Napout* (1:15-cr-00252)

Dear Judge Chen:

    On behalf of defendant Juan Ángel Napout and certain of his family members, we respectfully submit this letter in reply to the government's January 25, 2019 letter and in further support of the motion to exonerate Mr. Napout's bond and release certain assets.

    The government consents to the release of $7,199,214.50 and the Miami properties (*see* Gov't Ltr. at 8, 10), and thus we request that the Court exonerate the bond to that extent and order the immediate release of those assets. Attached to this letter is a proposed Order directing the Clerk of the Court to send the cash portion to counsel's attorney escrow account, for purposes of returning the money to Mr. Napout's family, and to release the property.

    With respect to the remaining funds, the government does not dispute that there is no legal basis for the Court to hold funds belonging to Mr. Napout's family members for the purpose of satisfying Mr. Napout's financial penalties. Nor does the government dispute that it is their burden to establish that the funds belong to Mr. Napout. But instead of offering any actual proof of ownership, the government contends that the Court should hold the money merely because Mr. Napout and his counsel referred to the money as "his" at earlier stages of the proceedings.

    The government's attempt to parse words from prior stages of the proceedings to establish Mr. Napout as the owner of the bail funds does not satisfy their burden. For starters, at the initial bail hearing, the government described the jointly proposed bail conditions to Magistrate Levy, and did not state that the funds had to be Mr. Napout's own funds. Rather, the government merely stated the amount to be posted by a date certain. *See* 12/15/15 Tr. at 6. If, as the government now contends, it was of paramount importance to the government that the money

come from Mr. Napout's personal funds, it certainly could have stated so. It did not. Nor should it have mattered to the government whether the money used to post bail was Mr. Napout's personal money, his wife's money, his kids' money, or a combination. There is no reason to believe he was more or less of a flight risk depending on whether his own money was at risk or his family's money was at risk. Indeed, one would think Mr. Napout would be less likely to put his family's money at risk than his own. Moreover, because nobody on the defense team understood that the ownership of the money as between Mr. Napout and his family was a distinction with a difference for bail purposes, it is unsurprising that counsel used colloquial rather than precise terms when referring to the money.

More importantly, neither Mr. Napout nor his counsel hid the ball with respect to the source of the funds. Rather, as noted by the government at the February 25, 2016 bail modification hearing, Mr. Napout's counsel provided the government with spreadsheets identifying the various accounts from which the bail money was generated, and the government in turn provided copies of those spreadsheets to Magistrate Judge Levy. (2/15/16 Tr. at 31.) The spreadsheets specifically identified each account as well the accountholders for each account. Thus, if the account holders for a particular account were Mr. Napout and his wife, or Mr. Napout and his children, the spreadsheet made that clear. The government, the Court, and Mr. Napout's counsel were all working with the same information. There is no basis to conclude that the government or the Court were operating under any misimpression about the source and ownership of the funds posted for bail.[1]

## Argument

Mr. Napout does not dispute the Section 2044 provides the Court with discretion to hold the defendant's bail money for purposes of financial penalties. The government, however, offers no precedent for holding and applying bail money belonging to a third party for that purpose. To the contrary, the cases cited in the government's letter compel release of the money belonging to Mr. Napout's family. For example, in *United States v. Equere*, 916 F. Supp. 450, 454 (E.D. Pa. 1996), the court held that the money posted by the defendant's brother to secure the defendant's bail could not be applied against the defendant's fine. In *United States v. Rubenstein*, 971 F.2d 288, 294 (9th Cir. 1992), the Ninth Circuit overturned the district court's finding that funds advanced by a third party to defendant to secure his release had "passed to" the defendant. In Rubenstein, as here, the third party provided the funds to defendant's counsel, who posted the funds with the court. The defendant signed the appearance bond, which identified no one other than defendant as a surety. The Ninth Circuit noted, among other things, that "failure to disclose the source of bail funds has not previously been found fatal to a claim for release of such funds," that Rule 46 does not require the identification of the source of bail funds, and that "[i]dentification is generally unnecessary when the entire amount of bail is posted." *Id.* at 297.

---

1. The government argues that because approximately $8,600,000 came from accounts held jointly by Napout and his family members, that amount should be viewed as his money, or in the alternative that 50% of that amount be viewed as his. The government offers no legal support for viewing more than Mr. Napout's percentage interest in those accounts as his. In the calculations provided to the Court in Mr. Napout's January 8 letter motion, counsel attributed the amount reflecting Mr. Napout's percentage interest in each account to Mr. Napout. Thus, for example, if Mr. Napout jointly owned an account with one other person, counsel attributed 50% of the funds sent from that account for bail purposes as owned by Mr. Napout.

Honorable Pamela K. Chen  
January 31, 2019

3

Of course here, unlike in *Rubenstein*, the defense did identify the source of the posted funds for the government and the Court.[2]

    The government's attempt to recast the posting of bail money as a loan from the family to Mr. Napout also fails. The government offers no evidence that Mr. Napout's family provided the money as a loan to Mr. Napout, as opposed to providing their own money to counsel solely for the purpose of posting bail for his release. The government relies on a single case, *United States v. Bogart*, 490 F.Supp.2d 885 (S.D. Ohio 2007), in which the defendant sought the return of bail money to his father-in-law. However, in contrast to our case, the defendant and his father-in-law in *Bogart* conceded that the money was a loan, for which the court held that the lender did not have an enforceable right as to the bail money. *Id*. at 908. The court there further found that the purported loan was a rouse to avoid defendant's payment of restitution, and thus ordered that the money be surrendered to satisfy the defendant's restitution. *Id*. Thus, *Bogart* is not remotely analogous to this case, and provides no support for the government's position.

### Conclusion

    Upon the government's consent, we respectfully request that the Court exonerate Mr. Napout's bond and order the immediate release of $7,199,214.50 of the $13 million in cash posted for bail and still in the Court's account, as well as the release of the Miami properties. In addition, for the reasons set forth above and in our January 8, 2019 letter motion, we request the release of $4,120,785.50 of the remaining cash in the Court's account to Mr. Napout's counsel for the purpose of returning that money to his family members.

Respectfully submitted,

Marc A. Weinstein

cc:    AUSA Samuel P. Nitze  
        AUSA M. Kristin Mace  
        AUSA Keith D. Edelman

---

2. The government's other cited cases are inapposite. In *United States v. Brumer*, 405 Fed. App'x 554 (2d Cir. 2011) (summary order), the court rejected a motion by the defendant's wife seeking the return of money she posted as bail because the court found that the wife possessed the money solely as a result of a fraudulent conveyance from the defendant. *United States v. Shkreli*, No. 15-CR-637 (KAM), 2018 WL 3425286 (E.D.N.Y. July 10, 2018), did not involve any claim that the account used to satisfy the defendant's financial penalties belonged to anyone other than the defendant. In *United States v. Starkie*, 166 F.3d 1211 (table), 1999 WL 5068 (4th Cir. Jan. 7, 1999), upon deposit of $500 with the court for bail, the court provided defendant with a receipt stating that the funds were "from" him, and the defendant asserted ownership over the funds in response to the government's Section 2044 motion.