

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| SPN/MKM/KDE | *271 Cadman Plaza East*<br>*Brooklyn, New York 11201* |

July 21, 2020

**Filed Under Seal**

<u>By ECF</u>

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Juan Ángel Napout
               Criminal Docket No. 15-252 (S-2) (PKC)

Dear Judge Chen:

      The government respectfully submits this letter in response to defendant Juan Ángel Napout's July 21, 2020 supplemental submission in further support of his renewed motion for a sentence reduction ("Defendant's Letter" or "Def. Ltr."). ECF Dkt. No. 1418. Although Napout has tested positive for COVID-19, it is the government's understanding that he has not exhibited symptoms of the virus. In any event, Napout still has not met his burden of demonstrating (1) that there are "extraordinary and compelling reasons" for his release under 18 U.S.C. § 3582(c)(1)(A)(i) or § 1B1.13 of the United States Sentencing Guidelines ("U.S.S.G."), namely, that his circumstances are so changed that it would be inequitable to continue his confinement; or (2) that compassionate release would not undermine the goals of the original sentence as articulated in the Court's analysis of the factors under 18 U.S.C. § 3553(a) at Napout's sentencing less than two years ago. For the reasons set forth below and in the government's two prior memoranda in opposition to Napout's motions for compassionate release (ECF Dkt. Nos. 1359, 1411), incorporated herein by reference, the Court should again deny Napout's request, without prejudice to its renewal if his condition materially changes.

I.    Napout Has Not Demonstrated Any "Extraordinary and Compelling"
       Reasons That Would Make Him Eligible For Release

      Napout argues that he is entitled to compassionate release because his positive COVID-19 test demonstrates that "[t]here is simply no basis to continue to assert that Mr. Napout's health and life are not at risk, especially in light of his documented hypertension

and age." Def. Ltr. at 1. The argument is conclusory and fails to acknowledge or apply, much less demonstrate satisfaction of, the legal standard for compassionate release.

Section 3582(c)(1)(A)(i) of Title 18 permits a Court to modify an already imposed sentence only upon a showing by the defendant of "extraordinary and compelling reasons." Congress has delegated authority to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission's applicable policy statement is U.S.S.G. § 1B1.13. With the passage of the First Step Act, Congress empowered courts to grant compassionate release absent a motion by the Bureau of Prisons ("BOP"), an authority which did not previously exist, but did not change the applicable standard. See United States v. Ebbers, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020). With the passage of the First Step Act, "Congress did not revise the [compassionate release] statute's substantive text or alter the USSC's authority to define 'extraordinary and compelling reasons.'" Id.

Application Note 1 to U.S.S.G. § 1B1.13 sets forth four circumstances that constitute "extraordinary and compelling reasons." Of those, Napout appears to be moving under Note 1(A), Medical Condition of the Defendant.[1] Note 1(A) states that "extraordinary and compelling reasons" exist when "the defendant is suffering from (i) a terminal illness," or "(ii) . . . is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process" that also "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Note 1(A) focuses on "serious and advanced illness[es] with an end of life trajectory." Thus, Note 1(A) "applies to a defendant younger than 65 who has a specific life-ending or debilitating illness with a predictable, dire short-term prognosis." Ebbers, 432 F. Supp. 3d at 429.

Importantly, compassionate release, which was first included in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, ch. II, 98 Stat. 1987, was intended to be a "safety valve" to reduce a sentence in the "unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner." S. Rep. 98-225, at 121 (1983) (emphasis supplied); see also United States v. Traynor, No. 04-CR-0582 (NGG), 2009 WL 368927, at *1 (E.D.N.Y. Feb.

---

[1] The other three provisions clearly do not apply. Specifically, Note 1(B) applies only to defendants over age 65; Note 1(C) addresses family circumstances, such as the death of the caregiver of a defendant's minor children; and Note 1(D) grants the Director of the BOP authority to find other extraordinary and compelling reasons. None of these circumstances apply to Napout, who is 62 years old, has not identified any extraordinary family circumstances, and whose request for compassionate release has now been denied by the BOP. Accordingly, he is not eligible to invoke those provisions. Cf. Ebbers, 432 F. Supp. 3d at 429 n.10 (noting that defendants younger than 65 are "not eligible to be evaluated under" Note 1(B)).

13, 2009) (recognizing that Congress indicated that § 3582(c)(1) "applies . . . to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner."). Congress did not indicate any intention to allow the compassionate release provision to undermine its goal of "avoid[ing] unwarranted sentence disparities." See 18 U.S.C. § 3553(a)(6); United States v. Booker, 543 U.S. 220, 250 (2005) (noting that "Congress's basic statutory goal" was to create "a system that diminishes sentencing disparity"). If courts stray beyond the circumstances warranting compassionate release listed in U.S.S.G. § 1B1.13, they "risk introducing significant disparities in sentences under the rubric of compassionate release." Ebbers, 432 F. Supp. 3d at 430. As Judge Valerie Caproni noted in Ebbers: "If that risk substantially materializes, it could undermine respect for law. It would be particularly unfortunate if only well-heeled defendants are in a position" to persuade district courts that their condition makes them eligible for compassionate release. Id. at 430 n.11. Judge I. Leo Glasser has similarly emphasized the importance of only granting compassionate release when the sentence imposed by the court has become "inequitable" or "unfair" in light of a "terminal illness." United States v. LoCascio, No. 90-CR-1051 (ILG) (E.D.N.Y. July 17, 2020) ("LoCascio Order").

The defendant bears the burden of demonstrating that his current sentence has become "inequitable" and that he is therefore eligible for compassionate release. See Locascio Order, at 7; United States v. Gioeli, No. 08-CR-240, 2020 WL 2572191, at *4 (BMC) (E.D.N.Y. May 21, 2020); Ebbers, 432 F. Supp. 3d at 426-27 (citing United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")).

Here, Napout was tested for COVID-19 based on the Court's request, not because he was exhibiting any symptoms. Napout suggests that the positive test result compels his release, but, in fact, the test result coupled with Napout's lack of acute symptoms to date undercuts the original premise for his application, which was the avoidance of exposure to the virus.[2] See, e.g., United States v. Russo, No. 16-CR-441 (LJL), 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020) (denying motion for release by defendant who tested positive on grounds that, inter alia, "releasing [the defendant] from the MCC will not provide him with the protection sought by his motion: relief from the risk of contracting COVID-19. There also is no suggestion that the condition is terminal for the defendant.").

---

[2] Napout has repeatedly misrepresented the nature of the government's opposition to his applications for release – describing the government's position as "cavalier," suggesting at oral argument that the government's opposition is motivated by animus towards Napout, and arguing in his most recent filing that the government previously took the position that there was no risk of the virus spreading at FCI Miami or of Napout contracting the virus. These arguments are wrong, are flatly contradicted by the record, and should be rejected.

The inquiry now turns on facts related to Napout's health condition and FCI Miami's ability to provide adequate treatment. Napout argues that there is no "reason to believe that FCI Miami is capable of keeping [him] alive and healthy" but offers no support for this claim, or for a finding that Napout or the broader community would be made safer by his release into the South Florida community. Cf. Russo, 2020 WL 1862294, at *8 ("At this time, the Court cannot say that [inmate who tested positive] – or other federal prisoners – would be made safer by [defendant's] transfer to a halfway house."). Notably, there have been no inmate deaths reported at FCI Miami, and the BOP virus data reflect that thousands of inmates have contracted and recovered from the virus while in custody, while Miami-Dade County is now reporting 87,035 confirmed cases and 1,309 deaths from COVID-19.[3] Courts have recognized that the fact of a positive test by an inmate with no symptoms, or moderate symptoms, does not warrant release. See, e.g., United States v. Davis, No. 12-CR-712 (SHS), 2020 WL 3790562, at *2-*3 & n.2 (S.D.N.Y. July 7, 2020) (concluding no "extraordinary or compelling" reasons for sentencing reduction where defendant had contracted mild case of COVID-19 and was receiving medical treatment at BOP facility, noting "limited scope' of relief under 18 U.S.C. § 3582(c)"); United States v. Decker, No. 17-CR-738 (LAK), 2020 WL 3268706, at *1-*2 (S.D.N.Y. June 17, 2020) (denying compassionate release for defendant who had tested positive for COVID-19, noting that "while defendant was infected with COVID-19, the record does not suggest that he suffered any complications from hypertension. To the contrary, he was asymptomatic"); United States v. Binday, No. 12-CR-152 (CM), 2020 WL 4017822, at *6 (S.D.N.Y. July 16, 2020) ("The Court concedes that better medical care can be found outside prison walls—especially for a man with [defendant's] financial means. That said, BOP is capable of providing [defendant – who had tested positive –] with adequate medical care, and appears to be doing so."); United States v. Littrell, No. 18-CR-00123-JO, 2020 WL 3889053, at *3 (D. Or. July 10, 2020) (denying compassionate release application from defendant with severe obesity, diabetes, and hypertension who tested positive at BOP facility where 10 inmates died and 661 inmates recovered from virus because BOP "properly managed the disease" and defendant was "asymptomatic and has now recovered from his bout with COVID-19"); see also United States v. Santiago, No. 92-CR-563, 2020 WL 2475068, at *3 (BMC) (E.D.N.Y. May 13, 2020) (citing report which concluded that "80% of COVID-19 patients 'will develop mild flulike symptoms, including fever, dry cough, and body aches that can be managed at home'" and concluding "[i]t would be highly irregular, to say the least, to cut short a prison sentence in the face of such unalarming potentialities.").

In United States v. Gioeli, Judge Brian Cogan considered the application of a defendant who had tested positive for COVID-19, but who had remained asymptomatic. Judge Cogan concluded that "the defendant has neither a terminal illness nor an inability to

---

[3] The county-by-county data is available at https://usafacts.org/visualizations/coronavirus-covid-19-spread-map/, which is the data relied upon by the CDC. See https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html. Napout's suggestion at the last hearing that only people who go to nightclubs contract COVID-19 is clearly inaccurate.

4

administer self-care" in light of the fact that the "defendant has not yet, and may not ever, become seriously ill due to COVID-19" and "his facility seems well equipped to deal with it." 2020 WL 2572191, at *4. Notably, defendant Gioeli has several pre-existing conditions that put him at a higher risk of experiencing serious consequences from the virus than Napout, including diabetes, prior heart attacks and heart surgery. Id. at *2. Judge Cogan concluded that Gioeli had failed to meet his burden of demonstrating an extraordinary and compelling reason for compassionate release.

In LoCascio, Judge Glasser denied the compassionate release application of Frank LoCascio, the former underboss of the Gambino organized crime family, whose crimes of conviction, including racketeering and murder, are appropriately distinguished from Napout's in the analysis of the Section 3553(a) factors.[4] LoCascio Order at 10. Judge Glasser's analysis is relevant, however, in its framing of the inquiry before the Court and its application of the relevant legal standards. Glasser concluded, for example, that the defendant's age (87) and medical conditions (including chronic obstructive pulmonary disease requiring nocturnal oxygen, coronary artery disease, right coronary artery not amenable to intervention, hyperlipidemia, hypertension, Barrett's esophagus, chronic pain, and sick sinus syndrome requiring pacemaker placement) did not constitute extraordinary or compelling reasons for release, notwithstanding the COVID-19 pandemic, because, among other factors, the defendant did "not have a terminal illness as defined in U.S.S.G. § 1B1.13 Application Note 1(A)(i)." Id. at 6. The Court went on to note that it was required "to determine whether the circumstances as they exist now provide extraordinary and compelling reason to reduce the defendant's sentence." Id. at 8 (emphasis supplied); see also id. (citing United States v. Hidalgo, 2020 WL 2642133 at *4 (S.D.N.Y. 2020), for proposition that "speculation about what could happen if inmates in general, or the defendant in particular were to contract COVID-19 is not an extraordinary or compelling reason for release"); *Sheldon Silver, Former N.Y. Assembly Speaker, Will Finally Go to Prison*, N.Y. Times (July 20, 2020) (district judge imposes 78-month prison sentence after rejecting arguments that Silver, 76, with a history of cancer and suffering from myriad health conditions, including chronic kidney disease, anemia, thrombocytopenia, and obesity, should be sentenced to home confinement based on risks posed by COVID-19); United States v. Silver, 15-CR-93 (VEC), Dkt. No. 509 (Silver sentencing submission).

In sum, Napout has not met his burden of demonstrating that he suffers from a "specific life-ending or debilitating illness with a predictable, dire short-term prognosis." Ebbers, 432 F. Supp. 3d at 429. His age and current health condition, including his positive test for COVID-19, do not constitute an extraordinary or compelling reason that would make him eligible for release, and his motion fails on this ground alone.

---

[4] Defendant Thomas Gioeli was similarly convicted of racketeering conspiracy in relation to his membership in the Colombo crime family, including acts violence such as murder conspiracies.

II.     The 3553(a) Factors Weigh Heavily Against Release

Even if the Court were to find that Napout is eligible for a sentencing modification, which he is not, the Court nevertheless must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny [the motion for release] if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Gotti, 2020 WL 497987, at *2 (S.D.N.Y. Jan. 15, 2020).

As detailed in the government's opposition to Napout's initial motion for compassionate release, the sentencing factors in 18 U.S.C. § 3553(a) – which caused the Court to impose a sentence of 108 months' imprisonment less than two years ago – all weigh against release. See generally Gov. Opp'n, ECF Dkt. No. 1359, at 18-20.

In this context it bears emphasizing that the Court conducted an extraordinarily detailed sentencing proceeding and, after careful consideration of all of the relevant factors, "impose[d] a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing." 18 U.S.C. § 3553(a). "What justifies compassionate release is a finding that new mitigating "extraordinary and compelling" circumstances exist to reduce that sentence; it is not an opportunity to second guess or to reconsider whether the original sentence was just." Ebbers, 432 F. Supp. 3d at 429, 433. Courts should take care not to "introduce unprincipled variance[s] into the execution of duly-imposed sentences" and not to "undermine the goals of the original sentence." Id. (granting compassionate release where the 78-year-old defendant, who had served 13 years of a 25-year sentence, was "sick, weak, disoriented, and bedridden" and "up to the point of approaching death," and where the defendant had "essentially served [a] life sentence" such that the goals of sentencing were not undermined by the early release).

Here, Napout has not demonstrated that any of the § 3553(a) factors have changed in the two years since sentencing. As the Court remarked at sentencing, there is "no question" that Napout was convicted of "absolutely a serious crime that warrant[s] significant punishment," particularly since Napout committed the offenses "not because of need but because of greed." Sent. Tr. at 153-56. The evidence presented, which revealed Napout to be "stealthy, sneaky, calculating, and greedy," also did not "bode well for his potential to recidivate or to re-offend." Id. at 162, 167. And the need for general deterrence is as strong now as it was at the time of sentencing. See id. at 156 (statement of the Court that "clearly, a message, a very strong message, of deterrence has to be sent to others").

In addition, Napout has never accepted responsibility for his crimes or expressed any remorse, which weighs heavily against any reassessment or second guessing now. See LoCascio, No. 90-CR-1051 at 12 (noting "the Court is unaware of a syllable of remorse that has fallen from his lips since" the defendant's sentencing). Accordingly, the government respectfully submits that Napout has failed to demonstrate a shift in the § 3553(a) factors that would warrant his release after serving only one-third of his sentence even if he were eligible under U.S.S.G. § 1B1.13, which he is not. See United States v.

6

Binday, 2020 WL 4017822, at *7 (observing, in connection with 3553(a) analysis of defendant who tested positive: "That the COVID-19 outbreak struck during Binday's term of incarceration is unfortunate—as it has been for other similarly situated inmates—but it does not provide an extraordinary and compelling reason to release him after having served less than a third of his sentence for his serious and pervasive fraud."). Because a sentence of time served would substantially undermine the goals of sentencing, Napout's renewed motion should be denied with leave to refile if his medical condition materially changes. Cf. Russo, 2020 WL 1862294, at *8 (denying release application of defendant who tested positive "without prejudice to renewal based on, among other possibilities, a deterioration of [defendant's] condition, a change in the ability of the BOP to care for him, or any other changed circumstances").

III.　　Sealing

　　　　The government has filed this letter under seal in an abundance of caution in light of the fact that Napout filed his submission under seal "[b]ecause [his] letter includes information about Mr. Napout's medical condition." Def. Ltr. at 1 n.1. However, the government notes that, even prior to filing his submission with the Court, Napout appears to have been in contact with the press about his medical condition. See, e.g., "Jailed Soccer Official Contracts Coronavirus in Florida Prison," New York Times, Jul. 20, 2020 (quoting from a telephone interview with defendant Napout's lawyer Marc Weinstein). In light of the fact that Napout has already made the information public, it appears that the basis for sealing no longer exists. Accordingly, the government takes no position with regard to the sealing or unsealing of this submission in addition to the related submissions by the government and Napout (ECF Dkt. Nos. 1417-18).

IV.　　Conclusion

　　　　For the foregoing reasons, Napout's motion for a modified sentence under 18 U.S.C. § 3582 should be denied, with leave to refile if his medical condition materially changes.

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　SETH D. DuCHARME
　　　　　　　　　　　　　　　　　　　　Acting United States Attorney

　　　　　　　　　　　　　　　By:　　　/s/
　　　　　　　　　　　　　　　　　　　　Samuel P. Nitze
　　　　　　　　　　　　　　　　　　　　M. Kristin Mace
　　　　　　　　　　　　　　　　　　　　Keith D. Edelman
　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorneys
　　　　　　　　　　　　　　　　　　　　(718) 254-7000

cc:　　Counsel of record (by email)
　　　　Clerk of Court (PKC) (by ECF)