

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

July 20, 2020

VIA EFILE

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
New York, New York 11201

    Re:    *United States v. Webb et al.*, 15 CR 252 (S-2) (PKC)

Dear Judge Chen:

    Today, the Government has reported that Mr. Napout was tested for COVID-19 on July 16 and, as we feared would happen, has contracted the virus. We write to address that and the following related developments: (i) Mr. Napout, as we understand it, has been moved to a block in the prison housing other inmates with the virus, where he is in a cell with two other inmates; (ii) Mr. Napout's medical records from the BOP confirm that he suffers from, among other things, hypertension and has been prescribed medicine (taken twice daily); and (iii) the number of positive COVID-19 tests at FCI Miami has risen to at least 95 inmates and 10 staff members.[1]

    While each of these developments is cause for significant alarm, the direct and immediate threat to Mr. Napout's health is paramount and finally needs to be addressed. When we first raised this issue in April, we were told that there was no reason to believe that there is a risk that the virus will infiltrate and spread within FCI Miami. Then, after the virus did just that and FCI Miami reported 79 positive inmate tests less than ten days after reporting none, we were told that there is still no reason to believe that Mr. Napout was at risk of contracting the virus. Now, and predictably, Mr. Napout has contracted the virus. There is simply no basis to continue to assert that Mr. Napout's health and life are not at risk, especially in light of his documented hypertension and age. The American Heart Association considers any person with a blood pressure above 130 systolic (upper number) or 80 diastolic (lower number) to be hypertensive, and higher levels indicate hypertension stage 2 or, at even higher levels, a hypertensive crisis

---

1. Because this letter includes information about Mr. Napout's medical condition, it has been filed under seal.

requiring immediate medical consultation (even absent a COVID-19 diagnosis).  *Understanding Blood Pressure Readings*, American Heart Association, https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings.  ███████████████████████████████████████████████████████████████████████████████████████ (Copies of these medical records are attached to the Government's letter of July 20, 2020, submitted under seal.)  In short, Mr. Napout is particularly susceptible to severe consequences from the virus.  (*See* July 15, 2020 Ltr. at 4-5 (citing cases in which courts have released inmates with hypertension due to their susceptibility to COVID-19).)

      Nor is there any reason to believe that FCI Miami is capable of keeping Mr. Napout alive and healthy.  In fact, it is particularly disturbing that FCI Miami has apparently stopped testing more inmates in the face of a massive outbreak of the virus within the prison.  The BOP website reports how many tests have been done at a facility, and how many results from those tests remain pending.  FCI Miami reports that it has performed 167 tests, and 95 inmates with positive results, or a staggering 57% positive rate.  For unknown reasons, the number of tests performed at the facility has leveled off over the past week, other than for the tests of Mr. Napout and his cell mate (who also tested positive).  As a result, any subsequent downward change in, or leveling of, the rate of positive cases reported by the BOP merely means that FCI Miami has stopped testing, not that the virus has stopped spreading throughout the facility.  For comparison purposes, FCI Danbury, which had 91 inmates test positive, performed 814 tests.  FCI Miami, by apparently stopping any additional inmate testing, seeks to curtail the spread of news of a crisis within the facility rather than to curtail the crisis itself.

      For all these reasons, we request that the Court grant Mr. Napout's motion for a sentence modification, and schedule an immediate court conference concerning these updates.

Respectfully submitted,

/s/ Marc A. Weinstein
Marc A. Weinstein

CC: All counsel of record via ECF